**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 7:22-CV-87 (LAG) |
| JAMES COFIELD, PAULINA Y. CHEEKS-COFIELD, and UNITED FINANCIAL CASUALTY COMPANY, | : |
| Defendants. | : |

## ORDER

Before the Court are Plaintiff State Farm Fire and Casualty Company (State Farm)'s Motion for Summary Judgment (Doc. 18) and Defendant United Financial Casualty Company (UFCC)'s Motion for Summary Judgment (Doc. 16). For the reasons set forth below, Plaintiff State Farm's Motion (Doc. 18) is **GRANTED** and Defendant UFCC's Motion (Doc. 16) is **DENIED**.

## FACTUAL BACKGROUND

On February 4, 2021, Defendant James Cofield (Cofield)—who was operating his vehicle in his capacity as a driver for transportation network Lyft, Inc. (Lyft)—was involved in a motor vehicle accident in DeKalb County, Georgia.[1] (Doc. 1-1 ¶ 15; Doc. 16-3 ¶¶ 1, 7; Doc. 17-1 ¶¶ 1, 7). The unknown driver who collided with Cofield fled the scene of the accident. (Doc. 1-1 ¶ 15; Doc. 16-3 ¶ 2; Doc. 17-1 ¶ 2). Cofield contends that the

---

[1] The relevant facts are derived from the Parties' Statements of Material Facts (Docs. 16-3, 18-2), responses thereto, and the record in this case. When evaluating the Motions for Summary Judgment, the Court "view[s] the facts in the light most favorable to the nonmoving party on each motion." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022) (citing *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)).

unknown driver caused the accident and his resulting bodily injuries. (Doc. 1-1 ¶ 16). Defendant Pauline Y. Cheeks-Cofield, Cofield's wife, claims she sustained damages for loss of consortium stemming from her husband's physical injuries. (*Id*.).

At the time of the accident, the Cofields had two automobile insurance policies with Plaintiff State Farm (State Farm Policies). (Doc. 1-1 ¶¶ 11–14; Doc. 16-3 ¶¶ 4–5; Doc. 17-1 ¶¶ 4–5). One of the State Farm Policies, Policy Number C064-501-11, was for the 2008 Kia Sedona ("the Kia Policy") that Cofield was driving during the accident. (Doc. 1-1 ¶11). The Kia Policy included uninsured motorist (UM) coverage of $100,000 per person and $300,000 per occurrence. (*Id.*). The Cofields also had Policy Number C064-500-11 through State Farm for a 2007 Honda Civic, which also included uninsured motorist coverage. (*Id.* ¶ 13). The Cofields paid the premiums for both State Farm Policies. (*Id.* ¶¶ 11–14). In accordance with O.C.G.A. § 33-1-24, Lyft maintained UM coverage for its drivers in Georgia. At the time of the accident, Lyft had a policy with Defendant UFCC that provided UM coverage of $1,000,000 per occurrence. (*Id.* ¶ 19). Lyft paid the premiums for the UFCC policy (Doc. 16-3 ¶ 10).

## PROCEDURAL BACKGROUND

On July 8, 2022, Plaintiff filed a Complaint against Defendants in the Superior Court of Lowndes County, Georgia. (Doc. 1 ¶ 1; Doc. 1-1). Defendants removed the action to this Court on August 24, 2022, pursuant to the Court's diversity jurisdiction. (Doc. 1 at 1); 28 U.S.C. § 1332. Plaintiff seeks a declaratory judgment that "the UM coverage provided by UFCC is primary and that the UM coverage provided by [Plaintiff] . . . is excess[.]" (Doc. 1-1 ¶ 35). On March 8, 2023, Defendant UFCC filed a Motion for Summary Judgment. (Doc. 16). On March 29, 2023, Plaintiff filed a Motion for Summary Judgment. (Doc. 18). Both parties timely responded and replied. (Docs. 17, 20–22). On November 8, 2023, the Court held a hearing regarding the Parties' Motions for Summary Judgment. (Doc. 24). The Motions are now ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate where "the evidence shows 'that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.'" *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (citation omitted). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018) (quoting *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004)). On a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party" and resolves factual disputes for the nonmoving party when doing so is supported by sufficient evidence. *Gogel*, 967 F.3d at 1134 (quoting *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (per curiam)); *Whitehead v. BBVA Compass Bank*, 979 F.3d 1327, 1328 (11th Cir. 2020). "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . ." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (per curiam) (omission in original) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

## DISCUSSION

Plaintiff and Defendant, agreeing that there is no genuine issue of material fact, each ask the Court to determine, as a matter of law, that the other is the primary UM insurer responsible for covering the Cofields' losses. Under Georgia's common law stacking rules, this question typically is governed by the "receipt of premium" test. Plaintiff, however, argues that O.C.G.A. § 33-1-24, which was enacted by the Georgia General Assembly in 2015 and became effective on May 3, 2016, abrogated the receipt of premium test in the context of UM coverage for transportation network companies and their drivers. Therefore, according to Plaintiff, the plain language of § 33-1-24 mandates that Defendant is the

primary insurer because the statute requires transportation network companies to "maintain . . . a primary motor vehicle insurance policy" on its drivers. (*See* Doc. 18-1 at 4–10). Defendant, on the other hand, argues that § 33-1-24 simply requires Lyft to carry *a* primary motor vehicle insurance policy on its drivers, but does not mandate that Lyft's insurer would indeed bear the initial responsibility for compensating an injured insured. (Doc. 16 at 6–10). Defendant argues that Georgia's common law "receipt of premium" test governs this case and can be applied without contradicting the requirements of § 33-1-24. (*Id.*).

"Under Georgia law, when more than one source of uninsured motorist coverage is available, claimants may stack the policies, but the priority of the multiple uninsured motorist carriers regarding which has primary responsibility for coverage must be determined. To assist in this task, Georgia courts use three tests: the 'receipt of premium' test, the 'more closely identified with' test, and the 'circumstances of the injury' test." *Dairyland Ins. Co. v. State Farm Auto. Ins. Co.*, 656 S.E.2d 560, 562 (Ga. Ct. App. 2008). At issue here is the "receipt of premium" test—a common law rule created to address instances where two or more insurance carriers provide coverage for the same event, but the injured insured only pays a premium to one of the carriers. *Georgia Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 336 S.E.2d 237, 238 (Ga. 1985). The rule was fashioned to "simplify such cases [] by reducing the number of parties involved." (*Id.*). To determine the priority of payment, the rule provides that "it is the carrier that receives a premium from the injured insured that bears initial responsibility for compensating him up to its policy limits." *Cont'l Ins. Co. v. S. Guar. Ins. Co.*, 388 S.E.2d 16, 17 (Ga. Ct. App. 1989) (citations omitted). Such carrier is deemed to be the primary insurer. (*Id.*). "[T]he factor of premium payment. . .is a single and uniformly-occurring fact which addresses itself to the relationship of the injured [insured] to the policy rather than the circumstances of the injury to the policy. This status rather than incident context controls." (*Id.*) (quoting *Travelers Indem. Co. v. Md. Cas. Co.*, 379 S.E.2d 183 (Ga. Ct. App. 1989)).

O.C.G.A. § 33-1-24(b)(1) requires transportation network companies to "maintain or cause to be maintained a primary motor vehicle insurance policy that . . . recognizes the driver as a transportation network company driver." *See also Tisdale v. Farmers Ins. Exch.*,

890 S.E.2d 363, 368 (Ga. Ct. App. 2023). The statute requires that the policy must provide "a minimum of $1 million for death, personal injury, and property damage per occurrence and . . . uninsured and underinsured motorist coverage as required by [O.C.G.A. §] 33-7-11." O.C.G.A. § 33-1-24(b)(3). The UM coverage must apply from "the period of time a driver accepts a ride request on the transportation network company's digital network until the driver completes the transaction or the ride is complete, whichever is later." *Id.* § 33-1-24(a)(5)(B). Under subsection (c), the requirement can be satisfied either by "[a] commercial motor vehicle insurance policy purchased by the transportation network company or the driver that provides coverage that meets the requirements set forth in subsection (b)," provided the "driver submit verification of such coverage to the transportation network company." *Id.* §§ 33-1-24(c), (f). The statute makes clear that "[n]othing in this Code section shall be construed to require a personal vehicle insurance policy to provide primary or excess coverage for transportation network company services." *Id.* § 33-1-24(g)(1). In fact, personal insurance policies can explicitly exclude "any and all coverage afforded under the owner's insurance policy for any loss or injury that occurs while a driver is logged on to a transportation network company's digital network or while a driver provides transportation network company services." *Id.* § 33-1-24(g)(2).

When considering the meaning of a statute, "we must presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 751 S.E.2d 337, 342 (Ga. 2013) (citations and punctuation omitted). Statues "should be read according to the natural and most obvious import of the language, without resorting to subtle and forced constructions, for the purpose of either limiting or extending their operation." *Ga. Mut. Ins. Co. v. Gardner*, 422 S.E.2d 324, 326 (Ga. Ct. App. 1992) (citations and punctuation omitted). A court examining the meaning of a statute thus must

> look diligently for the intention of the General Assembly . . . [and] follow the literal language of the statute unless it produces contradiction, absurdity, or such an inconvenience as to ensure that the legislature meant something else. Absent

5

> clear evidence that a contrary meaning was intended by the legislature, we assign words in a statute their ordinary, logical, and common meanings.

*Turner v. Ga River Network*, 773 S.E.2d 706, 708 (Ga. 2015) (citations omitted). "All statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with the existing law[.]" *Botts v. Southeastern Pipe-Line Co.*, 10 S.E.2d 375, 382 (Ga. 1940) (citation and punctuation omitted).

In the limited context of transportation network companies, O.C.G.A § 33-1-24 abrogates the "receipt of premium" test and decides priority of payment. Adopting the Defendant's interpretation of § 33-1-24 would require the court to employ an impermissibly "subtle and forced construction." *Ga. Mut. Ins. Co.*, 422 S.E.2d at 326 (citations and punctuation omitted). Defendant's argument hinges on the legislature's choice of article, but such parsing of words renders the use of "primary" in the context of insurance contracts meaningless. As case law demonstrates, there can only be *one* primary insurance carrier because they bear the "*initial* responsibility for compensating [an injured insured] up to its policy limits." *Cont'l Ins. Co*, 388 S.E.2d at 17 (emphasis added). It is clear that the statute mandates that the coverage provided by transportation network companies for their drivers be primary when applicable. The statute contemplates and sets forth the requirements for a driver's personal policy to be primary when the driver submits verification of a complaint policy. *See* O.C.G.A §§ 33-1-24(c), (f). The legislature also considered issues related to personal insurance policies in §§ 33-1-24(g)(1) and (2). Thus, the legislature clearly considered the circumstance under which the personal policy of a driver operating under the auspices of a transportation network services company would be considered to be the primary policy when it enacted legislation requiring that transportation network service companies to "maintain or cause to be maintained a primary motor vehicle insurance policy[.]" O.C.G.A. § 33-1-24(b)(1).

With regard to Defendant's argument that "[n]othing about the statute 'overruled' the receipt of premium test," the "receipt of premium" test is a common law rule fashioned

6

by Georgia courts to "fill the void" where underinsured coverage law "provid[ed] no guidance for the resolution" of priority of payment. (Doc. 16-1 at 9); *Georgia Farm Bureau Mut. Ins. Co*, 336 S.E.2d at 237. A void no longer exists in the limited context of transportation network companies as the legislature has provided guidance for determining priority of payment through O.C.G.A § 33-1-24(b) which abrogates the "receipt of premium" test in the limited context of transportation network companies like Lyft.

As the Court interprets O.C.G.A § 33-1-24 to mean that a transportation network company providing a primary insurance policy with UM coverage shall bear initial responsibility for compensating an injured insured, the motor vehicle insurance policy issued by Defendant to Lyft is primary. For these reasons, the Court **DENIES** Defendant UFCC's motion for summary judgment and **GRANTS** Plaintiff State Farm's motion for summary judgment.

## CONCLUSION

Accordingly, Defendant UFCC's Motion for Summary Judgment (Doc. 16) is **DENIED** and Plaintiff State Farm's Motion for Summary Judgment (Doc. 18) is **GRANTED.**

**SO ORDERED**, this 26th day of September, 2024.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**